## NATIONAL BANK OF ROLLA, Appellant, v. ROMINEE et al., Respondents.

St. Louis Court of Appeals, March 9, 1909.

1. **BILLS AND NOTES: Indorsee: Burden of Proof: Fraud: Want of Consideration.** In an action on a promissory note by an indorsee against the makers, where the defense was fraud in the procurement of the note and that it was without consideration, the burden was on the defendant to prove a want of consideration and a knowledge thereof by the indorsee; on the defense of fraud, the burden was on the defendant to prove the note was obtained by fraud, it then devolved upon the indorsee to prove the acquisition of the note in good faith.

2. ——: ——: ——: ——: ——: **Notice.** The indorsee of a promissory note who acquired it in the usual course of business for value and before maturity, will not be charged with knowledge that it was without consideration or that it was obtained by fraud by mere notice of facts which would put a prudent man upon inquiry, but he must have actual knowledge of the fraud or want of consideration; not knowledge in the sense that he could testify to it in a trial, but such knowledge as would satisfy the triers of the issue that he acted in bad faith in purchasing the note. In an action by an indorsee on a promissory note, where the defense was want of consideration and fraud in the procurement of the note, an instruction that if the plaintiff was informed of the fact that there was fraud or want of consideration, such information would constitute knowledge which would preclude his recovery, was erroneous.

Appeal from Phelps Circuit Court.—*Hon. Leigh B. Woodside,* Judge.

REVERSED AND REMANDED.

*Frank H. Farris* and *Harry Clymer* for appellant.

(1)  The law is well settled in this State that before an indorsee's title to a promissory note can be impeached he must have actual knowledge of facts which impeach the validity of the note. Mere knowledge of facts which would put a prudent man upon inquiry is not sufficient. The good faith of the transaction should be, and is the decisive test. Upon this principle plaintiff's peremptory instruction should have been given at the close of the whole case. Hamilton v. Marks, 63 Mo. 167; Leavitt v. Taylor, 163 Mo. 171; Bank v. Stanley, 46 Mo. App. 440; Brown v. Hoffelmeyer, 74 Mo. App. 385; Wilson v. Riddler, 92 Mo. App. 335; Bank v. Hammond, 104 Mo. App. 403; Jennings v. Todd, 118 Mo. 296; Bank v. Bank, 109 Mo. App. 672. (2) It is also well settled that the consideration of negotiable paper in the hands of a *bona fide* holder, for value before maturity, cannot be inquired into. *Mala fides* alone can open the door to such inquiry. Gross negligence even is not sufficient; actual notice of the facts which impeach the validity of the note must be brought home to the holder. Mayes v. Robinson, 93 Mo. 114; Bank v. Leeper, 121 Mo. App. 688; Wright Inv. Co. v. Realty Co., 178 Mo. 72.

*Watson & Holmes* for respondents.

The court did not err in refusing plaintiff's instruction A. It did not correctly define actual notice. On the other hand instruction 4 given by the court on its own motion did correctly define actual knowledge. "Positive knowledge and knowledge which puts a person upon inquiry are both actual knowledge." Hill v. Tessier, 15 Mo. App. 299; Speer v. Riggin, 40 Mo. 405.

GOODE, J.—Action on a promissory note by an indorsee. The note was executed by respondents, who are husband and wife, March 22, 1905, payable September 15, 1905, to the order of C. A. Post, for $120, with interest from maturity at eight per cent. The answer says the note in suit and another like it, were procured from respondents by the fraud of Post the payee, were without consideration and were purchased for appellant by its cashier when he knew both facts, viz.: that the notes had been obtained by fraud and were without consideration. Evidence in favor of both appellant and respondents was introduced on these issues and one witness swore he·told appellant's cashier when the latter was considering the purchase of the note, that he ought not to buy it, for it was a barefaced steal. There is other evidence tending to prove bad faith in appellant. The disposition of the appeal turns on the rulings of the court in instructing the jury; principally on the accuracy of this instruction:

"The word 'knowledge' as used in these instructions means information of the facts constituting the fraud or failure of consideration, if any. It does not mean information of facts from which a prudent man might be expected to investigate and ascertain whether there was any fraud in the transaction or not or failure of consideration, but such information must be as to some material fact constituting such fraud or failure of consideration.

"Upon the other hand it does not mean that he must of himself know that the facts are true, but if plaintiff was informed that any such fact did exist, then such information would constitute knowledge of such fact, if you find it did exist."

The transaction in question antedates the time when our Negotiable Instrument Act went into·effect. In advising the jury the court rightly discriminated between the two defenses of want of consideration and procurement of the note by fraud. As to the former,

the jury were told, that though they found there was no consideration for the note, they must find a verdict for the bank on said defense if they also found it bought the note and Post assigned it to the bank for value before the bank had knowledge of the want of consideration, and further, that the burden was on respondents to establish by the greater weight of evidence, want of consideration and knowledge thereof by appellant before purchase. Regarding the defense of fraud, the court instructed that if the jury found appellant purchased the note before maturity and in good faith for a valuable consideration, without knowledge of any false and fraudulent representations on the part of Post, even though he had made such false and fraudulent representations to obtain the note, they should find for the bank; that if they believed the note was obtained from respondents by fraud, it devolved on the bank to show by the weight of evidence, it had purchased for a valuable consideration and without knowledge of the fraud. Another charge said the execution of the note in suit was admitted, and if the jury found from the evidence appellant purchased before maturity, in good faith, for a valuable consideration and without knowledge of any false representations on the part of Post or failure of consideration, the issues should be found for the bank. Those charges were sound, for the burden was on respondents to prove want of consideration of the note and knowledge thereof by the bank when it bought; also to prove the note was obtained from them by fraud, in which case it devolved on the bank to prove it acquired the note in good faith. [Hamilton v. Marks, 63 Mo. 167; Hahn v. Bradley, 92 Mo. App. 399; 1 Randolph, Com. Paper (2 Ed.), 566; 2 Id., 1024, 1028; 1 Daniel, Neg. Inst. (5 Ed.), secs. 814, 815.] The instructions threw the stress of the case on the knowledge the bank had when the note was bought of want of consideration for it or fraud in obtaining it, instead of the bank's good or bad faith, and attempted to advise

the jury what "knowledge" meant, as used in the instructions; saying it meant information of facts constituting the fraud or failure of consideration, if any, and did not mean information of facts from which a prudent man might be expected to investigate and ascertain whether there was failure of consideration or fraud. Further, that knowledge did not mean he (*i. e.* the bank's cashier) must have known the facts were true; but if appellant was informed any such fact existed, this information constituted knowledge of the fact, if the jury found it existed. That charge was erroneous and quite misleading. It is true, as the instruction says, that notice of want of consideration for a negotiable instrument, or of fraud in procuring its execution, will not be imputed by law to an indorsee who acquired the instrument in the usual course of business, for value and before maturity, simply because when he bought he was apprised of facts which would put a prudent man on inquiry and enable him, by a reasonable investigation, to learn the whole truth. This species of notice is not applied, by way of a legal presumption, to transactions in commercial paper, as it is to other affairs where it appears the party to be charged with notice was remiss in pushing an inquiry which the facts he knew ought to have incited. [Hamilton v. Marks, supra; Mayes v. Robinson, 93 Mo. 114.] It is not essential to prove by direct testimony an indorsee knew when he acquired a negotiable instrument, it lacked consideration or was obtained by fraud; but the triers of the facts may find he knew as much from relevant circumstances and, perchance, from such circumstances as would suffice in other dealings to raise a presumption of notice. The difference is that in the instance of a negotiable instrument indorsed for value, in the usual course of business and before it was due, knowledge by the indorsee of the existence of an equity in favor of the maker, must be found as a fact. [Brown v. Hoffmeyer,

74 Mo. App. 385.]   But any information concerning an equity which may be given to the indorsee before he buys will not affect him, of course, with knowledge that the equity exists or authorize an instruction to the jury trying the issue to find the indorsee had knowledge, if they find information had come to him of the equity, or some material fact relating to it.   The information might be in the nature of vague rumors or circumstances to excite suspicion, but not impart knowledge, or even induce the belief there was some infirmity in the instrument.   And the information might be of a kind to stimulate inquiry in a careful man and therefore show the holder was careless in omitting to investigate before buying.   Those shades of culpability do not detract from the rights accruing to the indorsee by virtue of the negotiable quality of the paper.   [1 Daniel, secs. 774 et seq. and notes; 2 Randolph, secs. 998 et seq.]   The fact essential to defeat those rights is bad faith on the part of the endorsee in acquiring the paper; and this must be found by the triers of the fact unless the evidence is conclusive one way or the other. [Authorities, supra.] To deprive appellant of the status of an innocent holder for value, it must be found to have bought the note with knowledge of one or both of the defenses alleged against it.   It is not meant the officers of the bank who were connected with the purchase must have known the truth in the sense which would be requisite to enable them to testify to it in a trial; but that they had such knowledge as satisfies the triers of the issue they acted in bad faith; that is, in the belief, and not merely the suspicion, the note was tainted with fraud or lacked a consideration.

The judgment is reversed and the cause remanded. All concur.